1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11   CHRISTOPHER TZE CHIANG    ) NO. CV 13-1810-AS
     LEUNG,                    )
12                            )
                              ) **MEMORANDUM OPINION**
13          Plaintiff,        )
                              ) **AND ORDER OF REMAND**
14        v.                  )
                              )
15   CAROLYN W. COLVIN, Acting )
     Commissioner of Social   )
16   Security,                )
                              )
17          Defendant.        )
     _____)

18       Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS
19   HEREBY  ORDERED  that  this  matter  is  remanded  for  further
20   administrative action consistent with this Opinion.

21
22                          **PROCEEDINGS**
23
24       On October 9, 2013, Plaintiff filed a Complaint seeking review
25   of  the  Commissioner's  denial  of  Plaintiff's  application  for  a
26   period of disability, and disability insurance benefits ("DIB").
27   (Docket No. 3).  On February 11, 2014, Defendant filed an Answer
28   and the Administrative Record ("A.R.").   (Docket Entry Nos. 13,

                                   1

14).   The parties have consented to proceed before a United States Magistrate Judge.  (Docket Entry Nos. 15, 16).  On June 16, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim.  (Docket Entry No. 22).  The Court has taken this matter under submission without oral argument.  <u>See</u> C.D. Local R. 7-15; "Order Re: Procedures in Social Security Case," filed October 11, 2013 (Docket Entry No. 6).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former teacher and accountant (A.R. 34), asserts disability beginning June 18, 2009, based on the alleged mental impairments of major depression, bipolar disorder, anxiety, and paranoia (<u>id.</u> 139).  On August 2, 2011, the Administrative Law Judge ("ALJ"), Keith Dietterle, examined the record and heard testimony from Plaintiff and a vocational expert ("VE"), Susan L. Allison.  (<u>Id.</u> 24, 42-70).

On September 6, 2011, the ALJ issued a decision denying Plaintiff's application for DIB.  (<u>Id.</u> 24-36).  The ALJ found that Plaintiff had the severe impairments of affective mood disorder and a bipolar disorder.  (<u>Id.</u> 26).  The ALJ noted that he was also required to consider the effect of Plaintiff's obesity upon Plaintiff's co-existing impairments.  (<u>Id.</u>).  The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, and has the mental RFC to perform non-public simple routine tasks.  (<u>Id.</u> 27).

Relying on the testimony of the VE, the ALJ determined that Plaintiff was not able to perform his past relevant work, but was able to perform the requirements of such jobs as hand packager (Dictionary of Occupational Titles ("DOT") No. 920.587-018); and assembler plastic hospital parts (DOT No. 712.687-010). (Id. 35).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of June 18, 2009, through September 6, 2011, the date of the decision. (Id. 35-36). On August 20, 2013, the Appeals Council denied review. (Id. 1-6).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063,

3

1066 (9th Cir. 2006) (inferences "reasonably drawn from the record"
can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision
simply by isolating a specific quantum of supporting evidence, but
must also consider evidence that detracts from [the Commissioner's]
conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987)
(citation and internal quotation marks omitted); Lingenfelter v.
Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the
Court cannot disturb findings supported by substantial evidence,
even though there may exist other evidence supporting Plaintiff's
claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973).
"If the evidence can reasonably support either affirming or
reversing the [Commissioner's] conclusion, [a] court may not
substitute its judgment for that of the [Commissioner]." Reddick,
157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred in (1) failing to give
adequate weight to the opinions of his treating physicians: Fred
Chu, PsyD; Aurora Mellijor-Soliguen, MD; and Marianne Soor-Melka,
MD ("Claim One"); (2) failing to consider the factors set forth in
20 C.F.R. § 404.1527(d) in evaluating the opinions of Dr. Chu and
Dr. Mellijor-Soliguen ("Claim Two"); (3) failing to consider Dr.
Soor-Melka to be Plaintiff's treating physician and to develop the
record as to the basis of her opinion ("Claim Three"); (4) relying
on the opinion of a non-examining physician, Kevin Gregg, MD,
regarding impairment severity, when that physician did not review

4

the entire record ("Claim Four"); and (5) not properly assessing Plaintiff's credibility and failing to explain how he applied Social Security Ruling ("SSR") 96-7p to the facts and circumstances of the case ("Claim Five" and "Claim Six").[1]   (Joint Stip. 3).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the ALJ materially erred in the evaluation of the medical opinion evidence.[2]

## A.   Applicable Law

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1]   The Court notes that Plaintiff's opening arguments for claims one, two, four and five, fail to identify any error in the ALJ's consideration of his treatment records and the opinions of Plaintiff's treating sources.  Instead, Plaintiff does little more than recite boilerplate law regarding the weight to be given treating sources, the factors to be considered in evaluating medical opinions, the weight to be given to a non-examining source, and the factors to consider pursuant to SSR 96-7p in determining a plaintiff's credibility. See Joint Stip. 4-5, 7-9, 13-14, 16-17). It was not until the Defendant pointed out Plaintiff's failure to identify any error that Plaintiff, in his reply argument, set forth a cursory analysis of the ALJ's decision in this case. (Id. 5-6, 9, 14-15, 18-19).  This "tactic," whether due to careless briefing or by design, results in improper sandbagging of the Defendant and places an unnecessary burden on the Court.

[2]   The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

5

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  <u>Id.</u> § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." <u>Id.</u> §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. <u>See</u> <u>id.</u> § 404.1520(a)(4)(ii); <u>see also</u> <u>Webb</u>, 433 F.3d at 686.  The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); <u>Webb</u>, 433 F.3d at 686.  An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." <u>Webb</u>, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. <u>Id.</u>; 20 C.F.R. § 1520(a)(ii); <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1003 (9th

Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date. If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Tackett, 180 F.3d at 1098.

///

7

**B.** **The ALJ Materially Erred In Evaluating The Opinions Of Plaintiff's Treating Physicians And The Consultative Examiner**

Plaintiff contends that the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinions of Plaintiff's treating sources, Dr. Chu, Dr. Mellijor-Soliguen, and Dr. Soor-Melka, and instead crediting the opinion of the state agency consultant, Dr. Gregg, who only reviewed the medical records through July 2010. (Joint Stip. 4-10, 13-16). Plaintiff also contends that the ALJ improperly found that Dr. Soor-Melka was not a treating physician. (Id. 11-12).

### 1. **Legal Standard**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is

entitled to greater weight than that of a non-examining physician, and the weight afforded a non-examining physician's testimony depends on the degree to which he provided supporting explanations for his opinions); <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007); <u>Smolen</u>, 80 F.3d at 1285.   Where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence to properly reject it.   <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)); <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1160-61 (9th Cir. 2014); <u>Garrison</u>, 759 F.3d at 1012; <u>see also</u> <u>Orn</u>, 495 F.3d at 632-33; SSR 96-2p.


"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." <u>Lester</u>, 81 F.3d at 831; <u>see</u> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." <u>Andrews</u>, 53 F.3d at 1041.   Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." <u>Orn</u>, 495 F.3d at 632 (internal citations omitted).   Where the opinion of the

9

nonexamining, nontreating source is not contradicted by "*all other evidence in the record*," the ALJ need not discount that opinion. Andrews, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989)).  That is not the case here.

**2.   Analysis**

Dr. Chu

The ALJ reviewed the following records from Dr. Chu:  (1) a March 2010 Adult Psychiatric/Psychological Evaluation in which Dr. Chu diagnosed Plaintiff with bipolar disorder and assessed a Global Assessment of Functioning ("GAF") score of 70[3] (A.R. 349-54); (2) treatment notes from March 2010 through July 2010 (id. 343-49); (3) a June 2010 Mental Disorder Questionnaire Form in which Dr. Chu opined that Plaintiff was unable to cope with normal work

---

[3]     "The Global Assessment of Functioning Scale is a rating for reporting the clinician's judgment of the patient's overall level of functioning and carrying out activities of daily living. The GAF Score  is measured on a scale of 0-100, with a higher number associated with higher functioning." Montalvo v. Barnhart, 457 F.Supp.2d 150 n.5 (W.D.N.Y. 2006).  A GAF score in the 61-70 Range indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.  A GAF score in the 51-60 range corresponds to moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score in the 31-40 range corresponds to some impairment in reality testing or communication *or* major impairment in several areas such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family and is unable to work). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, AMERICAN PSYCHIATRIC ASSOCIATION 34 (4th ed. 2000).

10

stressors, was not able to make decisions at work, and was unable to interact with coworkers and supervisors (id. 313-17); (4) a September 2010 Impairment Questionnaire in which Dr. Chu found Plaintiff was largely moderately or markedly impaired in most mental activities (id. 420-27); and (5) a May 2011 Mental Residual Functional Capacity Questionnaire in which Dr. Chu assessed a Global Assessment of Functioning Scale score of 35,[4] stated Plaintiff was unable to do even simple work tasks, had no useful ability to function in almost all the mental abilities and aptitudes needed to do unskilled work, had no useful ability to do semiskilled and skilled work, and is unable to work (id. 443-47). (Id. 29-30).

The ALJ gave Dr. Chu's findings and opinions little weight:

Dr. Chu['s] responses on the multiple forms he completed are at odds with his observations during his therapy sessions. Dr. Chu opined the claimant could not do any shopping or cooking at Exhibit 7F, p. 6, yet his chart notes show the claimant shopping online and learning how to cook (Exhibit 6F, pp. 3, 4). I note [that] Dr. Chu stated the claimant did not have [the] social skills to interact with other people, yet the claimant testified he has had a girlfriend for 12 years, visits with his mother weekly, and was able to spend time at the Magic Mountain amusement park. I give Dr. Chu's statement the claimant is unable to work no weight, as the ultimate

---

[4]     See note 3.

determination of disability is an issue reserved to the
Commissioner. Dr. Chu's June 2010 statement the claimant
had memory impairment with poor concentration is
inconsistent with his May 2010 chart note that the
claimant had finished his CPA tests and [is] now feeling
"forced to work." Furthermore, there is no evidence Dr.
Chu personally observed the claimant falling asleep at
his job nor physically shaking at work and so I give
these statements no weight.[5] Dr. Chu's statement the
claimant is not able to drive himself places is
inconsistent with the observation of the claimant's
girlfriend, Ms. Yang, that the claimant can drive a car
and go out alone. Dr. Chu's statement the claimant is
incapable of taking care of his personal needs is
inconsistent [] with the observations of Dr. Melka that
the claimant can adhere to basic standards of neatness
and cleanliness.

(Id. 30 (citations omitted)).

A review of Dr. Chu's treatment notes, however, fails to
support the ALJ's findings and conclusions. For instance, although
Dr. Chu's June 15, 2010 report states that Plaintiff "does not do
any shopping or cooking" (id. 316), his treatment note does *not* say

---

[5]     The ALJ noted that, in his September 2010 Impairment
Questionnaire, Dr. Chu stated that Plaintiff experienced episodes
of deterioration or decompensation in work or work like settings,
as evidenced by the fact that Plaintiff "was physically shaking at
work, falling asleep at work, and was overwhelmed at any work
setting." (A.R. 30 (citing id. 425)).

that Plaintiff is learning how to cook; what the note states is "learn how to cook but stop cooking." (Id. 300). Moreover, Dr. Chu's note does not state that Plaintiff was feeling "forced to work" after taking his CPA tests; the note states that Plaintiff is "[a]ll finished with his CPA tests if he is forced to work." (Id. 310). These misstatements of the record do not support the ALJ's conclusion that Plaintiff is capable of working.

The ALJ also points to Plaintiff's long-time girlfriend, Plaintiff's weekly visits with his mother, and one two-hour trip to Magic Mountain as contradicting Dr. Chu's statement that Plaintiff does not have the social skills to interact with other people. (Id. 30). However, Dr. Chu's notes generally make it clear that Plaintiff has a "[b]ad relationship" with his mother and father (id. 300); he has "limited communications with mother" (id. 315); his girlfriend is the one who "talks most of the time" (id. 207); he does not speak to others except his girlfriend and therapist (id. 315); and he is "uncomfortable in social environment" (id. 314). At the hearing, Plaintiff explained that he and his girlfriend drove from Upland to Magic Mountain and stayed only two hours because he "got very tired." (Id. 52). Dr. Chu's notes clearly reflect that Plaintiff does not like to leave the house. (See, e.g., id. 300 ("do[es] not like leaving his house"); 309 ("Do not want to leave the house"; "Not leaving the house); 316 ("He does not go to public places due to severe discomfort with people.")). Accordingly, the ALJ's finding that Plaintiff's interaction with a long-time girlfriend, his mother, and his therapist, and his one two-hour trip to Magic Mountain contradicts

13

Dr. Chu's statement regarding Plaintiff's lack of social interaction skills is not supported by the record; in fact, these limited interactions may support Dr. Chu's conclusion.

Nor is Dr. Chu's June 2010 statement that Plaintiff has memory impairment with poor concentration inconsistent with Dr. Chu's May 2010 chart note that Plaintiff had finished his CPA tests. (Id. 30 (citing id. 310)). The classes Plaintiff was taking were online classes, and there is no indication that Plaintiff fully concentrated for long periods of time while "taking" those classes. In fact, one of Dr. Chu's treatment notes indicates that Plaintiff found himself sleeping to avoid the stress of taking those classes. (Id. 360).

The ALJ also found Dr. Soor-Melka's June 16, 2011 purported observation that Plaintiff can "adhere to basic standards of neatness and cleanliness," to be inconsistent with Dr. Chu's May 31, 2011 statement that Plaintiff is incapable of taking care of his personal needs. (Id. 30; see also id. 446, 453)). However, the Court notes that, contrary to the ALJ's finding, Dr. Soor-Melka did not state that Plaintiff can always adhere to basic standards of neatness and cleanliness. Dr. Soor-Melka found that Plaintiff was "[s]eriously limited, but not precluded" from adhering to basic standards of neatness and cleanliness. (Id. 453 (emphasis added)). Moreover, Dr. Chu's records make several references to Plaintiff's inability to fully manage his personal care throughout, providing further support for Dr. Chu's opinion regarding the level of Plaintiff's functioning with respect to personal care. For

instance, on March 4, 2010, Dr. Chu described Plaintiff's appearance as "Neat" (id. 304); on June 15, 2010, Dr. Chu noted Plaintiff "does not change to go to appointments and wears the same thing" (id. 313), Plaintiff ignores his self care when having manic episodes (id.), Plaintiff "eats the same food every day and every meal" (id. 315), and Plaintiff does not maintain his residence well (id. 316). In his May 31, 2011 report, in addition to noting that Plaintiff is "incapable of taking care of his personal needs," Dr. Chu also noted that Plaintiff is "unable to make even simple decisions of what meals he wants to eat" (id. 443), Plaintiff "is *at times* unable to take care of basic needs" (id. (emphasis added)), Plaintiff finds it stressful to go to the bathroom" (id.), Plaintiff "is struggling with the most simple activities such as getting out of bed, going to the bathroom, letting the dogs out" (id. 447), and Plaintiff is not able to complete every day household tasks (id.).[6]   Thus, Dr. Chu recognizes some waxing and waning of Plaintiff's ability to take care of his personal needs, and that Plaintiff especially ignores those needs when in his manic phases.   (See, e.g., id. 313).   Contrary to the ALJ's determination, Dr. Chu's findings *are* supported by Dr. Soor-Melka's opinion that Plaintiff is "[s]eriously limited, but not precluded" from adhering to basic standards of neatness and cleanliness. (Id. 453).

The Court finds that the ALJ's reasons for discounting Dr. Chu's opinions are not supported by substantial evidence.

---

[6]   There is also evidence that Plaintiff's girlfriend assists him with many of these tasks.   (See, e.g., A.R. 28, 52-57).

1

2

                    Dr. Mellijor-Soliquen

3        The ALJ reviewed the following records from Dr. Mellijor-

4   Soliguen who first saw Plaintiff in April 2006, and began providing

5   "consistent care" in January 2008:   (1) treatment notes from

6   January 2008 through August 2010 indicating diagnoses of gambling

7   disorder, depressive disorder, and bipolar disorder, with symptoms

8   of excessive sleeping, depression, isolation, and stress (id. 257-

9   97, 367-410, 412-19, 428-41); (2) a June 2010 Medical Source

10  Statement indicating a poor ability to understand and remember

11  simple and complex instructions, and interact with coworkers; and

12  a fair ability to sustain concentration and persistence, and

13  interact with the public and supervisors (id. 321-22); (3) a

14  September 2010 "Psychiatric/Psychological Impairment Questionnaire"

15  indicating bipolar disorder with primary symptoms of depression,

16  anxiety, mood swings, and insomnia; marked limitations in all

17  mental activities; incapable of tolerating even low stress work;

18  and likely absence from work more than three times a month as a

19  result of his impairments or treatment (id. 412-19); and (4) a

20  February 2011 "Psychiatric/Psychological Impairment Questionnaire"

21  indicating bipolar disorder with a guarded to poor prognosis, and

22  primary symptoms of mood swings, depression, anxiety, rumination,

23  obsessions and compulsions, suicidal ideations, and paranoia; with

24  marked limitations in the ability to understand, remember, or carry

25  out detailed instructions; maintain attention and concentration for

26  extended periods; perform activities within a schedule; sustain an

27  ordinary routine without supervision; work in coordination with or

28  proximity to others without being distracted by them; complete a

normal workweek without interruptions from psychologically based symptoms; all areas of social interactions, except for a moderate limitation in the ability to ask simple questions or request assistance; ability to set realistic goals; ability to respond to work setting changes; and moderately limited in all other mental activities (id. 429-41). (Id. 30-32).

The ALJ gave "little weight" to the findings and opinions of Dr. Mellijor-Soliguen because "her findings do not comport with the evidence." (Id. 32). The ALJ noted that Dr. Mellijor-Soliguen's 2006 diagnosis is "practically identical to her 2009 diagnosis," and that Plaintiff was able to work multiple jobs post-2006 "despite an almost identical mental condition." (Id.). The ALJ found Dr. Mellijor-Soliguen's opinion that Plaintiff had moderate limitations in all social interaction arenas to be inconsistent with Plaintiff's testimony that he "was able to spend time at Magic Mountain with his girlfriend, go shopping with her at Costco, and go out to eat with her," and concluded that Plaintiff's ability to maintain a twelve-year relationship with his girlfriend "speaks volumes as to his ability to socialize." (Id.). The ALJ further noted:

> Dr. Soliguen noted no positive clinical findings regarding social withdrawal or isolation, which seems inconsistent with the conclusion the claimant had moderate social limitations. Finally, Dr. Soliguen's limitations are inconsistent with the claimant's testimony and actions at the hearing. The claimant

testified articulately and clearly.  He was able to complete the hearing without breaks.  He answered the questions put to him fully and completely.

(Id.).

The Court finds that the ALJ's findings are not supported by substantial evidence in the record.  The fact that Dr. Mellijor-Soliguen's diagnosis in 2006 is the same as her diagnosis in 2009, only indicates that Plaintiff's diagnosis remained unchanged – it provides no information regarding the intensity of, or any change in, his symptoms over that time period.  As previously discussed in relation to the ALJ's assessment of Dr. Chu's opinions, the fact that Plaintiff had a his girlfriend for twelve years, went to Magic Mountain on one occasion with her, and goes to Costco and restaurants with her, does not necessarily "speak volumes" with respect to Plaintiff's ability to socialize with others, including coworkers, supervisors, and the public.

The Court finds that the ALJ's reasons for discounting  Dr. Mellijor-Soliguen's opinions are not supported by substantial evidence.

### Dr. Soor-Melka

Dr. Soor-Melka completed a Mental Residual Functional Capacity Questionnaire dated June 16, 2011.  (Id. 450-54).  At that time she had been treating Plaintiff for six weeks, for thirty minutes a

18

week.  (<u>Id.</u> 450).  Dr. Soor-Melka diagnosed Plaintiff with Bipolar I Disorder, noting that his mood is depressed, and he is withdrawn, paranoid, has poor judgment, is impulsive, anxious, and his affect is blunted.  (<u>Id.</u>).  She found him "[u]nable to meet competitive standards" in all mental abilities except for remembering work-like procedures, and understanding, remembering and carrying out very short and simple instructions.  (<u>Id.</u> 452).  She opined that due to Plaintiff's symptoms, "he is currently not able to meet competitive [work] standards."  (<u>Id.</u> 453).  She also found him unable to meet competitive standards in interacting appropriately with the general public, and maintaining socially appropriate behavior, and "[s]eriously limited, but not precluded" from adhering to basic standards of neatness and cleanliness.  (<u>Id.</u>).  She opined that Plaintiff would be absent from work more than four days per month, and noted that he "has difficulty with the simplest tasks."  (<u>Id.</u> 454).

The ALJ gave Dr. Soor-Melka's opinions "little weight":

Dr. Melka has no long-term physician patient relationship with the claimant.  Dr. Melka had only been treating the claimant for six weeks prior to completing the questionnaire form.  There is no evidence Dr. Melka reviewed any of the claimant's prior medical records nor performed any psychological tests.  Dr. Melka's statement the claimant had poor judgment is unsupported by little if any objective evidence in her notes.  There is no stated basis for this conclusion.  Her conclusions are

19

undermined by the claimant's testimony about his ability to interact with his girlfriend, shop, eat out, and watch movies on his computer, run errands, drive, and grocery shop.

(Id. 32).

The Court finds that the record does not support the ALJ's findings.

Although Dr. Soor-Melka had only treated Plaintiff for six weeks, and the record does not reveal whether she reviewed Plaintiff's prior medical records, Dr. Soor-Melka's diagnoses and opinions differ very little from the opinions of Plaintiff's other treating sources, Dr. Chu, and Dr. Mellijor-Soiguen.  Contrary to the ALJ's findings, Dr. Soor-Melka's treatment notes *support* her findings.  For instance, on February 10, 2011, she noted his insight was fair, his judgment "impulsive," his mood depressed and anxious, and his affect blunted (id. 464).  Also in February 2011 it was noted that at times Plaintiff believes he is the Messiah, experiences auditory hallucinations when depression or mania increases, has difficulty getting out of bed, frequently called in sick to his teaching job, experiences suicidal ideation, including wanting to buy and drive a motorcycle or car and crash it, fell asleep and had panic attacks at work, and was involuntarily hospitalized for a week in February 2010 because of his suicidal ideation and auditory hallucinations (id. 462-67 (see also id. 235-47)).  On March 29, 2011, she noted suicidal ideation, and fair

insight and judgment; on April 28, 2011, she noted he had two manic episodes, was feeling more depressed, his affect was very blunted, and he looked depressed (id. 456); on May 26, 2011, Dr. Soor-Melka's notes indicate that Plaintiff was experiencing suicidal ideation, and his affect was very blunted and sad (id. 455). Together, these notes lend support to Dr. Soor-Melka's June 2011 opinion that Plaintiff's judgment is poor.

Additionally, the ALJ's reliance on the fact that Plaintiff has a long-term girlfriend and that he goes shopping at Costco and to restaurants with her, does not constitute substantial evidence to support the ALJ's discounting of Dr. Soor-Melka's opinion concerning Plaintiff's poor judgment.

The Court finds that the ALJ's reasons for discounting Dr. Soor-Melka's opinions are not supported by substantial evidence

### Dr. Gregg

On July 15, 2010, Dr. Gregg completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique, based on his review of the record as of July 2010.[7] (Id. 325-41). Dr. Gregg did not review any later records.

---

[7] Specifically, Dr. Gregg reviewed Exhibits 1F-9F in the Administrative Record. (A.R. 340-41). This included records related to Plaintiff's involuntary hospitalization in February 2010; Dr. Chu's June 2010 Mental Disorder Questionnaire; and treatment notes from March through June 2010; and Dr. Mellijor-Soliguen's June 2010 Medical Source Statement and January 2008 through May 2010 treatment notes. (Id.).

Dr. Gregg found Plaintiff not significantly limited with regard to understanding and memory; able to carry out very short and simple instructions; and moderately limited with more detailed instructions, attention and concentration, and ability to perform activities within a schedule. (Id.). He also noted that Plaintiff's diagnosis is "not clear at this time,"[8] and stated, without any logical or factual basis, that "[Plaintiff] has a girlfriend, so [he] must be capable of some social and constructive activity as well." (Id. 338).

The ALJ gave "significant weight" to Dr. Gregg's opinion that Plaintiff had the mental residual functional capacity to perform non-public simple routine tasks because his "conclusion[] [is] commensurate with the record taken as a whole." (Id. 32-33). As set forth below, the Court does not agree.

The opinion of a nonexamining source may itself be substantial evidence if it is based on independent clinical findings that differ from those of the treating physician (Andrews, 53 F.3d at 1041), such as diagnoses that differ from those offered by another physician and that are not supported by substantial evidence, or findings based on objective medical tests that the treating

---

[8] This statement is contradicted by the following records which were available to and reviewed by Dr. Gregg: Plaintiff's admitting and discharge diagnosis from Canyon Ridge Hospital in February 2010 was "Bipolar Disorder" (A.R. 224); Dr. Chu's March 2010 diagnosis was "[bi-polar disorder" (id. 306); Dr. Chu's June 2010 diagnosis was bi-polar d/o severe, mixed)" (id. 317); and, Dr. Mellijor-Soliguen's treatment notes from 2008-2010 clearly indicate a diagnosis of bipolar disorder (see, e.g., 371-405).

22

physician has not considered (Orn, 495 F.3d at 632).  Here, Dr. Gregg discounted the findings of Dr. Chu and Dr. Mellijor-Soliguen for reasons the Court found unpersuasive (see Discussion supra), and did not base his opinion on any objective medical tests not considered by these treating sources.  Moreover, because Dr. Gregg's review was limited to medical records dated up to July 2010, his opinion did not take into account the later-dated reports and treatment notes of Dr. Chu, Dr. Mellijor-Soliguen, and Dr. Soor-Melka, which longitudinally document Plaintiff's mental health impairments.  Without having the benefit of reviewing *all* of Plaintiff's relevant medical records, the Court cannot conclude that Dr. Gregg's opinion constitutes substantial evidence, let alone that it merits the "significant weight" the ALJ afforded it more than a year later, in September 2011.[9]  See Lester, 81 F.3d at 831 (the opinion of a non-examining professional, *without other evidence*, is insufficient to reject the opinion of a treating professional).

Accordingly, the Court finds that the ALJ erred in giving the opinion of Dr. Gregg, a nontreating source, controlling weight over the opinions of plaintiff's treating sources, Dr. Chu, Dr. Mellijor-Soliguen, and Dr. Soor-Melka.

///

///

///

---

[9]  Indeed, the ALJ discounted the opinions of Dr. Soor-Melka based in part on the fact that she had not reviewed any prior medical records.

1

2

**C.    Remand Is Warranted**

3

4          The decision whether to remand for further proceedings or
order an immediate award of benefits is within the district court's

5

6  discretion.   Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir.

7  2000).   Under the credit-as-true rule, a district court should

8  remand for an award of benefits when the following three conditions
are satisfied:   "(1) the record has been fully developed and

9

10  further administrative proceedings would serve no useful purpose;

11  (2) the ALJ has failed to provide legally sufficient reasons for

12  rejecting evidence, whether claimant testimony or medical opinion;

13  and (3) if the improperly discredited evidence were credited as
true, the ALJ would be required to find the claimant disabled on

14

15  remand."   Garrison, 759 F.3d at 1020.   The third of these

16  conditions "incorporates . . . a distinct requirement of the
credit-as-true rule, namely that there are no outstanding issues

17

18  that must be resolved before a determination of disability can be
made."   Id. n.26; see also Harman, 211 F.3d at 1179-81 (where there

19

20  are outstanding issues that must be resolved before a determination
of disability can be made, and it is not clear from the record that

21

the ALJ would be required to find the claimant disabled if all the

22  evidence were properly evaluated, remand is appropriate).

23          Here, the Court has determined that the ALJ committed legal

24  error by not providing legally sufficient reasons for discounting

25  the opinions of Plaintiff's treating sources and giving controlling

26  weight to the opinion of the non-treating doctor.   Because

27  outstanding issues must be resolved before a determination of

28

24

disability can be made, and it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the improperly credited evidence were credited as true, the Court finds this to be an instance where further administrative proceedings would serve a useful purpose and remedy defects.[10]

**ORDER**

For all of the foregoing reasons, this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  January 5, 2015.

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[10]  The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021. Accordingly, the Court declines to rule on Plaintiff's claims regarding whether the ALJ erred in his credibility assessment. Because this matter is being remanded for further consideration, this issue should also be considered on remand.